23-1993, In Re. Agadia Systems. Is it Mr. Maceda? Maceda, that's correct. Good morning. Please proceed. Thank you. I have a sore throat this morning, so just bear with me a little bit on the presentation. So this appeal presents the question of whether or not the USPTO can be bound in the actions it has taken in separate but related applications, and whether or not agadiasystemsmartformularyhub.com is merely descriptive. I'd like to address the arguments in that order. So the USPTO and the TTAB have taken the unequivocal view that the USPTO can never be bound by actions it has taken in separate but related applications. Now, Agadia Systems, we acknowledge that that is generally the case, that the USPTO is not bound. However, this court's opinion in Boulevard indicates that the USPTO may be bound when they act impermissibly or pursuant to some arbitrary standard. I'm a little confused about this. When you say they're not bound, maybe they're not bound because they're two different cases. I mean, your question presumes that the result and the analysis for your mark versus the dot-com mark would be identical, and therefore they'd be bound by whatever they said. What's the basis for that? I respectfully disagree with that, Your Honor. I think what the TTAB got focused on is that the applications been filed are separate, but substantively, they're the same. And that's really the crux of our argument. You state that as a given, an unassailable principle. Does everybody else agree with that, including the PTO? The PTO does not agree with that, Your Honor. So our view is, during the... So your view is predicated on the fact that this mark and then the mark plus dot-com are unassailably the exact same thing that have to be treated precisely the same way? I'm saying that because they're substantively...  That's a yes, Your Honor. And that's because they're substantively the same. Because the USPTO, in reviewing the mark formulary hub dot-com, described the dot-com as a non-source identifying GTLD. That does not need to be disclaimed. That matter was up on appeal to the TTAB. During that appeal, the examining attorney withdrew the opposition to that mark, allowing it to be registered on the principal register subject to the specimen still needs to be approved. And so, therefore, what we're saying is, if you take the position once that formulary hub dot-com is merely descriptive, we appeal that, you review our appellate brief, you then withdraw your opposition, you describe the dot-com as a non-source identifying GTLD. Therefore, formulary hub and the dot-com application has the exact same meaning in this application, a formulary hub. And critically, the USPTO, they do not argue that the marks are substantively different. Nor do they argue that they made a mistake in registering or approving for registration. What is the status of the dot-com? Well, the dot-com has been stayed. It's been stayed twice. So your position is they can't reject this until they decide that? I want to see where your argument is taking us, because that case is not before us. The dot-com case is not before this panel, correct. But what we're indicating is, in our briefing, and I'll try to briefly summarize it, so we had formulary hub dot-com and then formulary hub filed roughly the same time. The arguments and objections on both sides, us and the USPTO, were the same going through up through the T tab. And then what happened is, on formulary hub dot-com, the examining attorney on her own stated, indicating that, although I think you're going to hear this morning that the applications are separate, she stated that they're related and that this mark could have an influence on the dot-com mark. So it was suspended once, and then it was resumed after the T tab made a ruling on formulary hub, which we now appealed to this court. But then the USPTO then obtained an order. We stayed on an ex parte basis, but nevertheless, they obtained an order staying dot-com, awaiting this court's result on formulary hub. So to us, it's disingenuous to say, oh, the applications are separate but unrelated, with no effect on each other, but oh, by the way, we're going to stay the dot-com. But disingenuous doesn't carry a legal consequence to it. Correct. So it seems like their view, as you stated, is we're going to wait for dot-com to see what the Federal Circuit says on this case. Your view is we should, what, finalize the dot-com analysis and get a SON appeal there before we decide the case before a SON? No. Or your view is that we have to decide the two together? No, Your Honor. You can decide the formulary hub appeal before you today, because our arguments related to dot-com as it relates to formulary hub are the arguments of waiver, are the arguments of judicial estoppel, are the arguments of equitable estoppel, which, by the way, the USPTO did not even oppose at the TTAB regarding equitable estoppel. So our argument is that the formulary hub, merely descriptive objection, is foreclosed. You already went through this. The USPTO and EGADI have already gone through this process. You reviewed it, you meaning the USPTO, and then upon us filing our appeal in the TTAB, you reviewed our arguments and said, yep, we withdraw our opposition. It's not a merely descriptive mark. We're going to approve it on the principal register. So if you're going to do that in formularyhub.com, remember the dot-com is the non-source identifying GTLD, formulary hub has the same nondescriptive meaning there as it does here, and they don't argue to the contrary. I've lost a step here. Where, what exactly then, when you say they've already decided that formulary.com is fine, what I thought, my understanding was that has not been finally determined. Judge, the issue of whether or not it's merely descriptive has been determined by their own concession. What remains pending is our specimen. They have also objected on the basis that our specimen doesn't meet the statutory requirements. That's the only thing that's being held up for this case? Yes, because they obtained the stay of dot-com. But in any event, there has not been a registration that has been approved, finally approved for formularyhub.com. That's correct, Your Honor. All right. So if that has not become final, why does it have some form of estoppel effect on this proceeding? Because, Your Honor, what's in our briefing is, and this goes back to our judicial estoppel, equitable estoppel, and waiver arguments, is they reviewed our appellate brief in the formularyhub.com appeal, and then right after that, they submitted new arguments and new evidence in this matter, in this formularyhub application, to rebut the very arguments that we made in the dot-com appeal. And they go so far as to indicate to this court, it's in our reply brief, pages 12 through 13, and this is the USPTO now, the proposed dot-com mark can still be refused registration on other grounds, including under section 2E1, if appropriate, while on appeal to the board. So it's our view that what they did in the formularyhub.com appeal, which the TTAB failed to address for reasons unknown, but we raise, is they reviewed our appellate brief, figured they might lose the argument, withdrew it, and then reloaded in this application with new arguments designed to rebut our merely descriptiveness argument in formularyhub.com, with an eye to this court, if they obtain a favorable ruling from this panel, jumping back into the dot-com proceeding that they claimed was separate and unrelated, to say, oh, by the way, even though we once approved that, that's now merely descriptive too, because the federal circuit said so. And that's why we raised the arguments, again, of waiver, judicial estoppel, and equitable estoppel. Does the Supreme Court's opinion in bookings.com have any bearing on this case? No, Your Honor. That has to do with acquired distinctiveness, which we don't argue in this case. Booking.com, the Supreme Court indicated that the dot-com had acquired secondary meaning within the marketplace. The USPTO has said exactly the opposite. The dot-com is a non-source identifying GTLD. And two, we filed dot-com as a Section 1B application. So it's an intent to use. So booking.com is completely inopposite. And the TTAB, in our view, improperly raised that argument on the USPTO's behalf. The USPTO did not raise that in their briefing. And this is the first time that they raised it in their briefing here. Oh, I think they respond to it because we received the TTAB opinion. I argued in our opening brief how the TTAB improperly made arguments on behalf of the USPTO. And then they responded to that in their response brief. But our position is that, one, it's improperly raised. This is the first time I'm having a conversation with a judicial panel regarding that argument. Because the USPTO didn't raise it. And therefore, we deem it to be improperly raised. You want to save your rebuttal and we'll hear from the government? I'm sorry, Your Honor? You want to save your rebuttal and we'll hear from the government? Or you want to... Yes, I don't know how much time. I see my light's still green. Okay, well let me just ask you. Well, I'll tell you what. Aside from all of the estoppel and all of that stuff, do you have another argument just on the merits of this case? Yes, I do. I want to just address the... Merely descriptive issue. Merely descriptive issue when it comes to, in particular, the term hub. So, Your Honor, the TTAB agreed with our definition of formulary. It's in the brief. I don't think the USPTO challenges that. At least it's not in their briefing. But on hub, both the USPTO and the TTAB took issue with the fact that we used a hardware definition of hub. When in reality, all of us used a hardware definition of hub. The TTAB adopted the USPTO's hardware definition, which is on page 43 of our brief, which is essentially identical to Agadia's definition, which is quoted on 39 of our brief. And a hub is a piece of computer hardware, not software, that acts as a connection point for other devices or computers in a network. And, therefore, it cannot merely describe the customized computing software services. The TTAB also relied on what we submit is an inopposite definition of hub as the effective center of an activity region or network. That's on page 45 of our brief. We submit that's legal error because you have to evaluate our computer-related mark with computer-related definitions. This is not. I believe the example of that definition states that the city is the financial hub of the country or something to that effect. So it's an inopposite definition, but it further illustrates how the mark is, at a minimum, suggestive. Because consumers would have to either evaluate the hardware definition of hub or the abstract definition of hub, choose between the two or apply the both. Either way, when you do that, in reference to our customized computing software services, the mental leap to what our services are is not instantaneous, which, as you know, is the legal standard, therefore making it a suggestive mark. Now, I see my time is up. You're getting into your rebuttal time now. I will just briefly state that we also submit that the TTAB improperly relies solely upon our advertising materials in evaluating the mark. We don't contest they have the ability to do that under NRA North Carolina for commercial context, but it does not supplant evaluating the mark to the customized computer software services themselves. Because as this court's predecessor in In Ray Reynolds ruled, it's the mark that the appellant seeks to register, not its advertisements. So the sole focus by the USPTO and the TTAB on solely our advertisements to evaluate the mark we submit is legal error. Thank you. Thank you. Good morning, Your Honors. The USPTO has an obligation to evaluate each trademark application on its own merit and its own record and to enforce every requirement for registration. The board fulfilled that obligation in this case by assessing the mere descriptiveness of the mark formulary hub when used for... So what is the status of the other case? Is it merely stayed? Has there been any dispositive action taken in that regard? That case has stayed. There's been no final agency action on the dot-com mark. And has the PTO stated, has anyone stated on the record what the basis is for staying it? The board's decision to stay the case was based on the board rule that allows for stay when a case on appeal to this court or some other case may have a bearing on the appeal before the board. So the board's stay order is a recognition that this case may have a bearing on the dot-com case. Now, Agadia, in essence, tries to capitalize on a technical error in the examination of the dot-com mark, which has not registered and is still pending, to keep the board and the examining attorney from performing their duty in this case based on the record at hand. In essence, Agadia is asking for a windfall in the form of... You say a technical error. What technical error are you talking about? Sure. We know from the record why the refusal in the dot-com application was withdrawn. On appendix page 264, that's the decision on reconsideration in this case. The examining attorney spoke to what happened in the dot-com case and said evidence that was referenced in the final office action for that case was not properly made of record due to a technical error. She went on to say, the examining attorney went on to say that she was unable to correct the technical error and was thus forced to withdraw the refusal. So we know from the record that the examining attorney believed she had no choice and had to withdraw. So it had nothing to do with this case. It was based on something else that was going on? Yes, it was a... So I thought you started by telling us it's your practice. Sort of like if you have cases that might affect each other, you treat them separately and you go on appeal. And now you're saying, no, no, no, we're only staying that because of some extraneous thing that happened with respect to that case. That's not why they're staying the case, Your Honors. That's why the refusal was withdrawn. The refusal... So these cases both had mere descriptiveness refusals because the term formulary hub describes Agadia services, customizing computer software that provides a central location online, a hub for formularies. So both cases had the mere descriptiveness refusal. We know from the record that the reason that the mere descriptiveness refusal was withdrawn in the .com case was because of a technical error, because of the examining attorney's belief that she was forced to withdraw. So what you're saying in a sentence, I guess, is that they are trying to leverage a technical error in the other case into a merits decision in their favor in this case. Exactly, exactly. So they're essentially asking for a windfall based on ongoing examination, and they're asking for a registration for a mark, formulary hub, that's merely descriptive given the record in this case. And... No, they're not asking for a thing that's... You're asking for a merely descriptive ruling. They're asking for a registration of a mark that's merely descriptive on this record, and the board had substantial evidence for its finding on the mere descriptiveness issue. It relied on, most notably, on Agadia's own... So the stay, though, I'm still a little confused.  Is the stay... Is the reason the board hasn't ruled on the .com proceeding because they're waiting to see what we say on the descriptiveness here, or, and, or, because there was some technical error so they just couldn't get around to doing it? No, it's because the board has recognized that this case may have a bearing on the case, the .com case, because of the mere descriptiveness refusal, or because of the other refusal, the specimen-based refusal. This application was... I thought it was a board policy to rule on each case, case by case, and not rely on the type of process that you're talking about. No, that's right. I mean, the .com application will still have to be assessed on its record. If the record we know is different in that case, the mark is different, the record is different. So based on what happens in this case, the board will still have to consider the .com application based on the record at hand. Now, there is, like I said, a bit of a discrepancy in how the applications have been treated because of this technical error and because of the examining attorney's belief that she had no choice but to withdraw the refusal. As Agadia points out, remand was available to the examining attorney, so that belief may have been mistaken. Is that issue, the question of whether that belief was mistaken, one that the TTAB is in a position to override? Override the examining attorney? The examining attorney can request remand of that case if there's an issue not involved in the case that may render the mark at issue unregisterable. So the examining attorney we cited in footnote 6, the rule, it's 37 CFR 2142F6, that allows the examining attorney to request remand to the board upon a ruling in this case. The board manual, corresponding section of the board manual, explains that those requests for remand are generally granted. That's the TBMP section 120902. And the manual says we generally grant these requests for remand because the mandate of the USPTO is to register only eligible marks. So there's a discrepancy now. It can be addressed if the ruling in this court has an effect. Can you want to go to the merits of the case in particular, the discussion of HUB by your friend? Okay. Now the board's decision was based on the evidence of record, including the dictionary entries for the term HUB. And there's no disagreement that mere descriptiveness is assessed in the context of the services. And the board started its analysis on page 12 of its decision by noting that the purpose of the services is to manage formularies through a centralized solution. And it went through the dictionary entries in the record for the term HUB and saw that they all were in line with this notion of a central location, a central solution, a central place for things to occur. The Lexico.com dictionary entry on page 12 of the board's decision explains that a HUB is the effective center of an activity. The software services Agadia provides provide a center of activity on the Internet for activities related to formularies for formulary management. The board on pages 12 and 13 goes on to rely on the entry from NetLingo.com that describes a HUB as a place of convergence where data arrives from one or more direction and is forwarded out in one or more direction. And the software services do that as well. It's a collection point, a repository for the client's formularies, information comes in from regulatory bodies and other places, formularies are edited, are created, and then information is forwarded out to health plan members, to pharmacies. So the services act as a place of convergence. The board considered the evidence that Agadia had put forward on page 13 that the term HUB is used in the context of computer hardware as the name or reference to a particular piece of equipment, a router-like device to which computers can act. But the board said in the context of these services, which pertain to software, there's no indication that the relevant purchasers who know what the services are, who know that the services are computer software related, that they will perceive the term HUB in this context as a reference to that device. So the board recognized the different ways the term HUB is used. They all were in line with what Agadia is doing with its services, and there was no reason to believe that the relevant purchasers who know we're dealing with customizing computer software that provides a location on the Internet for managing formularies, that they will view that term as a reference to the device. Unless the court has any other questions on the merits, we'll rest on the points in our brief, and I believe we're fully addressed on the preclusion theories. I'm happy to discuss any of them. We know why the discrepancy occurred. Agadia asks the USPTO to perpetuate the technical error and the issues in the dot-com case here, but this case should be decided on its record. The board had substantial evidence for its decision. Agadia is asking for a windfall based on ongoing examination, but the board's decision was reasonable based on substantial evidence, based on the specimen of use, Agadia's brochure, based on Agadia's website, based on Agadia's witness declaration, based on the dictionary entries in the record, based on third-party websites from third parties in Agadia's industry that use the term HUB as a reference to a collection point on the Internet for information, and the record also contains third-party registrations for services similar to the ones at issue here, software services for marks with the term HUB and formulary, registrations that recognize that those terms are merely descriptive. One point is this refusal is not an absolute bar to Agadia. This is a mere descriptiveness refusal. Agadia is free to reapply in the future in an application that recognizes the descriptiveness of the term, makes a claim of acquired distinctiveness, makes a disclaimer, things of that sort. So this is not an absolute bar, and given the record and the evidence and the board's well-based decision based on substantial evidence, we ask this court to affirm. Thank you. Now, counsel indicated to the court that there's a so-called technical error. The TBMP section 1207.02 provided the examining attorney with a remedy, and that was to seek remand, and to do that, she needed to establish good cause to get that remand, to get that evidence into the record. So we're describing it as a technical error. There's nothing technical about it. There's a rule and a standard that wasn't complied with. But I think maybe even more importantly is the fact that nothing required the examining attorney to approve the mark for publication on the principal register. So when we're classifying it as a technical error, it's not. It was approved for registration on the principal register by the examining attorney. So I just want to highlight that point. The other point, very briefly, is counsel indicated that the records are not different. So first time we're hearing that argument, number one. And number two, nowhere in there is that in the briefing of the USPTO. The counsel also references a so-called centralized solution in our advertising materials. Again, that goes back to us arguing before on solely focusing on our advertising materials. But presumes that centralized solution somehow equates to hub. There's no evidence for that. There's no evidence in the record that centralized solution equates to a hub. Yet they're proceeding on that basis as if it is. Hence the problem in not evaluating the mark to the customized computer software services themselves. Again, counsel indicated that the TTAB did that. They did not. I mean, I'm sure this panel has read the opinion and hopefully you'll reread it. It's not in there. Mr. Sworn's declaration, I believe it's on page 35 of our brief, but it's also in the appendix, indicates exactly what it does. And it was never cited by the TTAB when the panel issued its opinion. It's always the advertising materials, but never to the services themselves. So they focus on a conclusion, which anybody's advertising materials will do, is explain the ultimate function of the product or service. That's the point. And I think that's what this court's predecessor and Ingray Reynolds focused on. But that's here. What we're skipping over is here. The services to get there. And that was never addressed by the TTAB. And we submit that that's legal error. Now finally, I think my time is up. One more finally. The third party registrations were not part of the TTAB's opinion, and therefore we don't believe it's appropriate for this court to opine on those. Thank you. Thank you.